**UNITED STATES DISTRICT COURT**        **EASTERN DISTRICT OF TEXAS**

UNITED STATES OF AMERICA      §
                                          §

*versus*                                 §           CASE NO. 1:18-CR-5 (1)
                                          §

EUGENIO CERDA                        §

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Eugenio Cerda's ("Cerda") *pro se* Motion for Compassionate Release (#508), wherein he requests the court to reduce his sentence and release him from imprisonment. The Government filed a response in opposition (#511). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.     <u>Background</u>

On January 10, 2018, a federal grand jury in the Eastern District of Texas returned a three-count Indictment charging Cerda and nine codefendants in Count 1 with Conspiracy to Possess with the Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 846; in Count 2 with Conspiracy to Possess with the Intent to Distribute Cocaine HCl, in violation of 21 U.S.C. § 846; and in Count 3 with Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h), (i). On July 23, 2018, Cerda pleaded guilty to Counts 1 and 3 of the Indictment, pursuant to a binding plea agreement. The remaining count was dismissed on the Government's motion. Subsequently, on October 26, 2018, the court sentenced Cerda to 210 months' imprisonment as to both Counts 1 and 3, to run concurrently, to be followed by a five-year term of supervised

release.  Cerda is currently housed at Federal Correctional Institution Bastrop ("FCI Bastrop"), located in Bastrop, Texas.  His projected release date is December 21, 2032.

II.    Analysis

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

A.    Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior

to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F. 4th at 338 ("[A]n inmate has two routes by which he may

exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Probation reports that Cerda submitted a request for compassionate release to the warden of his facility on July 5, 2021, due to his medical condition, his purported status as an elderly inmate, and the alleged incapacitation of his wife.  On August 5, 2021, Warden G. Rosalez ("Warden Rosalez") denied Cerda's request because his medical conditions—hyperlipidemia and prediabetes—were not extraordinary or compelling reasons warranting compassionate release. Warden Rosalez explained, "you are able to perform instrumental activities of daily living . . . , your prognosis is good, you are 59 years of age[,] and you have completed only 23.7% of your sentence."  Warden Rosalez further denied Cerda's request based on his spouse's condition because he "failed to provide documentation" that his wife was incapacitated.  In the instant motion, Cerda claims that extraordinary and compelling reasons exist because he is elderly and has a serious medical condition.  Although Cerda complied with the exhaustion requirement as to

his age and medical condition before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment.

      B.    <u>Criteria for Release</u>

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release, he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id.* at 391. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id.* at 392. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1] *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert. denied*, 846 F. App'x 275 (2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2] However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3] Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement set forth in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP. *See Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018. The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum. The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines. 28 U.S.C. §§ 991(a), 994(a). At present, the Commission has only one voting member.

as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S. Ct. 2688 (2021); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13). A review of dictionary definitions also sheds light on the meaning of these terms. The word "extraordinary" is defined as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent," whereas the word "compelling" is defined as "forceful . . . demanding attention . . . convincing." *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *Compelling*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021). "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'" *Mitchell*, 2021 WL 1827202, at *2 (quoting *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)).

    1.    <u>Medical Condition</u>

In the instant motion, Cerda, age 60, contends that he is eligible for compassionate release due to his medical condition. Specifically, he claims that he is obese and a "former/current smoker," which he argues constitutes extraordinary and compelling circumstances warranting his release from prison.

Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a

terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."   U.S.S.G. § 1B1.13 cmt. n.1(A).   Here, according to Cerda's Presentence Investigation Report ("PSR"), prepared on September 13, 2018, and revised on October 1, 2018, he reported that he was 5 feet, 7 inches tall and weighed 185 pounds, giving him a body mass index ("BMI") of 29 and indicating that he was overweight.[4]   At that time, Cerda further reported that he had no chronic medical conditions or illnesses.

According to Cerda's BOP medical records, on December 2, 2021, Cerda was 5 feet, 7 inches tall and weighed 202 pounds, giving him a BMI of 31.6 and rendering him obese.   His medical records indicate that he suffers from hyperlipidemia (high cholesterol).   He is prescribed atorvastatin to treat his condition.   On July 23, 2021, David Perez, M.D. ("Dr. Perez"), noted that Cerda's hyperlipidemia was "controlled" with medication.   Indeed, on March 5, 2021, his total cholesterol measured at 205 mg/dL, and on July 9, 2021, his total cholesterol measured at 191 mg/dL, indicating that his cholesterol was high but was within the normal range.[5]   Cerda also has hypermetropia, meaning that he is far-sighted.   On April 9, 2021, Mark Sauer, D.D.S. ("Dr. Sauer"), determined that Cerda has pulpitis with chronic apical periodontitis (mild), a dental

---

[4] According to the Centers for Disease Control and Prevention ("CDC"), a BMI below 18.5 is underweight, a BMI between 18.5 and 24.9 is normal, a BMI between 25 and 29.9 is overweight, and a BMI of 30 or above is obese.

[5] According to the CDC, a total cholesterol level of less than 200 mg/dL is considered normal.

problem. Dr. Sauer ultimately discharged Cerda to his housing unit without any restrictions. Cerda's medical records reveal that on August 26, 2021, Dr. Perez determined that Cerda had "other specified symptoms and signs involving the digestive system and abdomen." Specifically, Cerda suffered from hemorrhoids, which were treated with hydrocortisone acetate suppositories. After receiving his second COVID-19 vaccine, Cerda complained of swelling in his left lower neck/supraclavicular area. He was seen by Cynthia Pokluda, P.A., for the issue, who concluded that she did "not know of any treatment needed" and that the swelling "should get better with time."

According to Cerda's medical records, he is prediabetic. On July 9, 2021, his A1c level was 5.8, which is slightly above normal.[6] As a result, on July 23, 2021, Dr. Perez recommended that Cerda make lifestyle and diet modifications, including properly exercising. Cerda further argues that compassionate release is warranted because he is a "current/former smoker." Despite his contention, there is nothing in his medical records that indicates that he smokes or has a history of smoking. In fact, smoking has been banned in federal prison for years. There is also no indication in his medical records that Cerda suffers from any symptoms stemming from smoking.

Probation reports that Cerda is classified as a BOP Medical Care Level 1 inmate. According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 1 inmates "are less than 70 years of age and are generally healthy. They may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months."

---

[6] A hemoglobin A1c test is a method for measuring blood sugar. According to the CDC, a normal A1c level is below 5.7%, a level of 5.7% to 6.4% indicates prediabetes, and a level of 6.5% or more denotes diabetes.

None of Cerda's medical conditions are terminal or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d at 433. To the contrary, Cerda's hyperlipidemia appears to be well managed with medication and monitoring. *See id.* The court acknowledges that, according to the CDC website, some of Cerda's underlying medical conditions—obesity, prediabetes, and a purported habit or history of smoking—can make him more likely to become severely ill should he contract COVID-19.[7] Nonetheless, such commonplace afflictions do not make Cerda's case "extraordinary." *See id*. at 434.

According to the CDC, 42.5% of the adult population in the United States is obese and 73.6% is overweight. Due to its pervasiveness, obesity does not rise to the level of an "extraordinary" circumstance warranting compassionate release. *See United States v. Harmon*, 834 F. App'x 101, 101 (5th Cir. 2021) (affirming denial of compassionate release to a 52-year-old woman who was obese with a body mass index of 36); *United States v. Grant*, No. 16-00172-01, 2021 WL 149308, at *4 (W.D. La. Jan. 15, 2021) (noting that "while obesity is an underlying medical condition that poses increased risk of severe illness from COVID-19, courts have found that obesity—alone or even paired with other medical conditions—does not provide adequate grounds for compassionate release"); *United States v. Sentimore*, No. 04-382, 2020 WL 7630778, at *2 (E.D. La. Dec. 22, 2020) (finding that defendant's morbid obesity did not rise to the level of an extraordinary and compelling circumstance that would justify his early release); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying

---

[7] In relevant part, the CDC states that adults with diabetes (Type 1 or Type 2) or who smoke or have a history of smoking can be more likely to become severely ill from COVID-19.

compassionate release to an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted").

Furthermore, the CDC reports that 34.2 million people in the United States, approximately 10.5% of the population, have diabetes. Of those, 90 to 95% have Type 2 diabetes. In addition, more than 12% of the adult population of the United States (29 million) has hyperlipidemia. In view of their prevalence, diabetes and hyperlipidemia cannot be deemed "extraordinary" in order to merit compassionate release. *See Thompson*, 984 F.3d at 434 (noting that neither hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol"); *United States v. Williams*, No. CR 15-83-SDD-EWD, 2021 WL 414825, at *3 (M.D. La. Feb. 5, 2021) (denying compassionate release to inmate with Type 2 diabetes and obesity because there was no evidence these conditions had diminished his ability to provide self-care within the facility); *United States v. Slone*, No. 7:12-05-KKC-4, 2021 WL 164553, at *1 (E.D. Ky. Jan. 19, 2021) (holding that inmate who suffered from heart disease (for which he had a stent), chronic obstructive pulmonary disease (COPD), high cholesterol, obesity, and depression had not established extraordinary and compelling reasons for compassionate release as his condition was not terminal and did not diminish his ability to provide self-care within the prison environment); *United States v. Cotto*, No. CV 16-36, 2020 WL 5761192, at *2 (E.D. La. Sept. 28, 2020) (recognizing the seriousness of diabetes and obesity but denying compassionate release because inmate had not shown that he was unable to take care of himself within the confines of the facility or that the BOP could not manage his medical conditions appropriately in

view of medical records showing that he was being administered the necessary care); *United States v. Dressen*, No. 4:17-CR-40047-01-KES, 2020 WL 5642313, at *3 (D.S.D. Sept. 22, 2020) (denying compassionate release because the defendant did not identify "how his Type 2 diabetes prevents him from providing self-care in a correctional facility setting or how it amounts to extraordinary and compelling circumstances"); *United States v. Jeffers*, 466 F. Supp. 3d 999, 1007 (N.D. Iowa 2020) (finding that the defendant had not demonstrated extraordinary and compelling circumstances when his diabetes and hypertension were controlled, monitored, and managed by the BOP).

The court further recognizes that, according to the CDC, Cerda's alleged history of smoking can make him more likely to become critically ill if he were to contract COVID-19. Nevertheless, the CDC reports that 14% of all adults in the United States (34.1 million) currently smoke cigarettes. Additionally, the CDC observes that "[q]uitting smoking cuts cardiovascular risks" and "1 year after quitting smoking, [a person's] risk for a heart attack drops sharply." Moreover, "[w]ithin 2 to 5 years after quitting smoking, [a person's] risk for stroke may reduce to about that of a nonsmoker's." Hence, having such a commonplace affliction does not make Cerda's case "extraordinary." Moreover, having a history of smoking is not sufficient to warrant compassionate release. *See United States v. Ramsey*, No. 2:14-CR-00296, 2021 WL 534470, at *5 (E.D. Pa. Feb. 12, 2021) (denying compassionate release to an inmate who had a history of smoking and hypertension); *United States v. Jones*, No. CR 02-0778, 2020 WL 7640944, at *3 (E.D. Pa. Dec. 23, 2020) (finding that a history of smoking did not warrant compassionate release where the defendant provided "no detail regarding his tobacco usage" and presented "no ailments associated with smoking and has been in federal prison since 2011, where smoking is banned");

*United States v. Brady*, No. CR 19-054-JJM-LDA, 2020 WL 7323366, at *3 (D.R.I. Dec. 11, 2020) (noting that "smoking history alone is not sufficient for this Court to find extraordinary and compelling grounds for release").

In this instance, Cerda appears to be able to provide self-care in the institutional setting, the BOP determined that he is still able to perform the activities of daily living, and Cerda makes no assertion or showing to the contrary. Thus, he has failed to establish the existence of medical problems that would constitute extraordinary and compelling reasons to reduce his sentence.

### 2. Age

Cerda asserts that he is eligible for compassionate release due to his age. While not binding on the court, the U.S.S.G. provide that extraordinary and compelling reasons exist as to a defendant's age when:

> [t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1(B).

In addition, under BOP Program Statement 5050.50, the criteria for a reduction in sentence may include:

> Inmates sentenced to an offense that occurred on or after November 1, 1987 (e.g., "new law"), who are age 70 years or older and have served 30 years or more of their term of imprisonment.

BOP Program Statement 5050.50, § 4(a). The BOP Program Statement, however, is not a statutory vehicle for seeking compassionate release in federal court, but rather, an internal agency guideline that may be altered by the BOP at will and which is not binding on the court. *See United States v. DeSciscio*, No. 88-cr-00239, 2020 WL 3893711, at *3 (D.N.J. July 10, 2020). In this

court, the defendant must properly show that compassionate release is warranted under the appropriate statute, 18 U.S.C. § 3852(c)(1)(A), by demonstrating extraordinary and compelling reasons for release under § 3852(c)(1)(A)(i). *Id.*

Here, according to Cerda's PSR, he is only 60 years of age. Although Cerda is 60 years old, there is no indication that he is experiencing serious deterioration in his physical or mental health. While he is obese, he is merely prediabetic, and his hyperlipidemia is controlled with medication. The BOP concluded that despite his health condition, he is still able to perform the activities of daily living and his "prognosis is good." Moreover, as of the date of his motion, Cerda had served 4 years of his 17.5-year sentence (or approximately 24%). According to the Administration on Aging, the population of persons in the United States over the age of 60 was 68.7 million in 2016, a 36% increase from 50.7 million in 2006, and was projected to increase substantially over the following decade. Hence, Cerda's age cannot be deemed extraordinary and, further, does not constitute an extraordinary and compelling reason justifying compassionate release.

As an alternative to finding "extraordinary and compelling reasons," 18 U.S.C. § 3582(c)(1)(A)(ii) allows modification of a term of imprisonment for age-related reasons when:

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community as provided under section 3142(g).

18 U.S.C. § 3582(c)(1)(A)(ii). Here, Cerda is merely 60 years of age, which is a decade less than the stated minimum age of 70. Moreover, Cerda has not served at least 30 years in prison, and his sentence was not imposed pursuant to § 3559(c), which applies to persons sentenced to life

imprisonment for certain violent felonies. Rather, Cerda was sentenced to a term of years, not to life imprisonment. Accordingly, Cerda also does not meet the statutory requirements for an age-related reduction in sentence set forth in 18 U.S.C. § 3582(c)(1)(A)(ii).

      3.    <u>Other Reasons</u>

Cerda also seeks compassionate release due the presence of COVID-19 in prison. Cerda expresses concerns regarding the spread of COVID-19 among the prison population. Nevertheless, as of May 12, 2022, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 1020) and 0 staff members at FCI Bastrop as having confirmed positive cases of COVID-19 and 422 inmates and 91 staff members who have recovered. Thus, it appears that the facility where Cerda is housed is handling the outbreak appropriately and providing adequate medical care.

Although Cerda expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Cerda, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or

home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release.  *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff.  To date, the BOP has administered approximately 316,729 doses of the vaccine. Indeed, according to Cerda's BOP medical records, he received three doses of the Pfizer-BioNTech vaccine on March 30, 2021, April 20, 2021, and October 27, 2021, respectively.  In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have been vaccinated for COVID-19.  *See United States v. Walker*, No. 20-cr-20027, 2021 WL 2474088, at *3 (C.D. Ill. June 17, 2021) (holding that because defendant was fully vaccinated, his underlying health conditions—diabetes, heart disease, high blood

pressure, asthma, and substance abuse—alone, were insufficient to establish extraordinary and compelling reasons justifying compassionate release); *United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Meyer*, No 1:14-cr-00148-01-MC, 2021 WL 1895240, at *1-2 (D. Ore. May 11, 2021) (denying compassionate release to inmate with heart disease, obesity, hyperlipidemia, and a history of smoking because he was fully vaccinated and there was a low infection rate at the facility where he was housed); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection"); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at *3 (S.D. Tex. Apr. 19, 2021).

Furthermore, it is well settled that "compassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). In exercising its discretion, the court finds that Cerda has failed to establish that his medical condition or other

circumstances constitute extraordinary and compelling reasons to reduce his sentence and release him from imprisonment.

### C.   Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94.  Cerda's offense of conviction entails his participation in a drug trafficking conspiracy involving the distribution of substantial quantities of fentanyl, heroin, and cocaine, as well as a conspiracy to launder monetary instruments.

Cerda served as a leader of the drug-trafficking organization, which was based in Baytown, Texas.  He supervised at least six individuals involved in effectuating his drug trafficking and money laundering activities.  Cerda conspired to distribute and possess with the intent to distribute 2.5 kilograms of fentanyl, 1 kilogram of heroin, and 21.035 kilograms of cocaine HCl.  According to his PSR, once converted to a marijuana equivalency, Cerda was responsible for 11,457 kilograms of marijuana.

Cerda has an extensive criminal history, beginning at the age of 20.  Specifically, Cerda has prior convictions for carrying a prohibited weapon, driving while intoxicated (3), driving while license suspended, conspiracy to distribute marijuana, possession with intent to deliver cocaine (3), and possession of marijuana.  Regarding his 1987 conviction for conspiracy to

distribute marijuana, Cerda was arrested when Border Patrol Agents found approximately 290 pounds of marijuana in his possession. He was also arrested for possession of stolen property, carrying a prohibited weapon, attempted murder (2), manufacturing and delivering a controlled substance, and theft. Moreover, when Cerda committed his offense of conviction, he was on parole for two separate convictions of possession with intent to deliver cocaine. His parole status in those cases was pending revocation at the time of sentencing.

Additionally, Cerda has a history of substance abuse, starting at age 20, including the frequent use of alcohol and cocaine up to the time of his most recent arrest. Indeed, while he was on supervised release for his 1987 conspiracy to distribute marijuana conviction, he violated the terms of his release by testing positive for cocaine seven times.

"Compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693. Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release under the circumstances. *Id.* at 693-94; *accord Keys*, 846 F. App'x at 276 (rejecting Defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal"). In view of the nature and circumstances of his offense of conviction, his substantial criminal history, his history of drug abuse, and his violation of previous terms of release, the court cannot conclude that Cerda's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

In addition, granting Cerda compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the instant case, releasing Cerda after he has served only 4 years (or approximately 24%) of his 17.5-year sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Cerda's track record is similarly a poor one. There is no reason to believe that Cerda would not revert to his prior drug-

dealing and drug-abusing behavior as well as engaging in other criminal activities if released from prison at this time.

III.    Conclusion

In sum, Cerda has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

For these reasons, Cerda's *pro se* Motion for Compassionate Release (#508) is DENIED.

SIGNED at Beaumont, Texas, this 12th day of May, 2022.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE